| | |
|---|---|
| DAVID R. RIBEAU, JR., <br><br> *Plaintiff,* <br><br> vs. <br> U.S.D. NO. 290, <br><br> *Defendant,* <br> _____ | Case No. 08-2659-EFM |
| DAVID R. RIBEAU, JR., <br><br> *Plaintiff,* <br> vs. <br><br> DEAN KATT, RICHARD SMITH JR., <br><br> *Defendants,* | Case No. 10-2104-EFM |

**MEMORANDUM AND ORDER**

Plaintiff David Ribeau, Jr. brings two cases, both arising out of Ribeau's employment with U.S.D. No. 290 ("USD 290") in Ottawa, KS. Ribeau brings his first action, Case No. 08-2659, against the school district, claiming that he was discriminated against on the basis of age when his supervisor, Richard Smith, Jr., reduced his responsibilities and later recommended that he be terminated. Defendant USD 290 claims Smith reduced Ribeau's work load because he had

complained about not having enough time to complete all of the tasks assigned to him. Additionally, USD 290 claims it based the decision to terminate Ribeau entirely on his poor work performance.

Ribeau's second action, Case No. 10-2104, is against Smith and the superintendent of the school district, Dean Katt, for depriving him of his property interest in continued employment without due process. Smith and Katt contend Ribeau did not have a property interest in his continued employment because Ribeau signed twenty-three separate employment agreements, each stating he was an at-will employee subject to termination for any or no reason.

The Court consolidated these actions for trial purposes on May 14, 2010.[1] Before the Court are summary judgment motions by each of the defendants. For the following reasons, Smith and Katt's motion in Case No. 10-2243 is granted, and USD 290's motion in Case No. 08-2659 is granted in part and denied in part.

## I. Background

USD 290 is a unified school district located in Ottawa, KS. On September 10, 1984, Ribeau was hired by USD 290 as a maintenance mechanic. During the course of his career, Ribeau was promoted once and assumed various job titles, but his primary responsibilities were similar in each position. In each of his supervisory positions, Ribeau's main responsibilities included supervising the custodial maintenance workers, grounds, and fleet for each of the properties owned by the district. Throughout the course of his employment, Ribeau was asked to sign twenty-three separate employment agreements, each stating he was an at-will employee. Although the school district's employee handbook required annual evaluations, Ribeau did not receive an evaluation during the eight years prior to his termination.

---

[1]Case No. 08-2659, Doc. 29; Case No. 10-2104, Doc. 11.

USD 290 contends that during the course of his employment, Plaintiff received verbal or written warnings on ten different occasions for failing to complete a task assigned to him by his supervisor. Additionally, Superintendent Dean Katt testified that he spoke with Plaintiff on at least one occasion about his failure to perform the required maintenance on the district's vehicles. USD 290 claims Ribeau's supervisors documented each of these warnings in Ribeau's employee file; however, despite having a line for employee signature, none of the warnings were signed by Ribeau. Ribeau denies ever receiving any warnings or having a conversation with any of his supervisors regarding his poor work performance. Moreover, Ribeau accuses Smith and Katt of adding the documentation to his employee file after his termination to conceal their discriminatory motive.

On February 7, 2008, Smith called Ribeau to his office to discuss the bids for concrete work he had asked Ribeau to obtain earlier that week. Smith claims Ribeau informed him he had not been able to receive any bids because he was too busy with his other responsibilities. As a result, Smith decided it would be best for Ribeau to share some of his duties with another employee. Ribeau contends that during this meeting Smith told him, "it's good to get young blood in these positions . . . they've got lots of energy and ideas."[2]

Approximately three weeks later, Smith recommended to Superintendent Dean Katt that they terminate Ribeau. Smith told Katt that when he asked Ribeau to complete an evaluation of the employees he supervised, Ribeau responded that he did not know any of them well enough to do it. Smith felt that because Ribeau had been supervising the same employees for many years, not knowing them well enough to complete an evaluation indicated Ribeau was not performing his job satisfactorily. In light of that and his previous history of disciplinary problems, Katt made the

---

[2]Doc. 23, ¶ 22.

decision to terminate Ribeau. Katt notified Ribeau of the decision to terminate him later that afternoon.

Although Katt did not provide Ribeau an opportunity to be heard prior to deciding to terminate him, Ribeau was aware of a school board policy that allows all terminated employees to appeal the termination decision. Had Ribeau filed an appeal, the school board would have proivded Ribeau an opportunity to present evidence and argue his case before deciding whether to uphold the termination. Ribeau, however, did not file an appeal of the decision.

## II. Standards

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[3] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[4] A fact is "material" when "it is essential to the proper disposition of the claim."[5] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[6]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[7] In attempting to meet this standard, the moving party need not disprove the

---

[3] Fed. R. Civ. P. 56(c).

[4] *Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Id.*

[6] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[8]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings, but must bring forth "specific facts showing a genuine issue for trial."[9] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[12] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[13]

Finally, summary judgment is not a "disfavored procedural shortcut." Rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

### III. Analysis

USD 290 now moves the court for summary judgment claiming that Ribeau failed to provide sufficient circumstantial evidence that the offered explanations for Ribeau's reassignment or

---

[8] *Id.* (citing *Celotex*, 477 U.S. at 325.)

[9] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[11] *Adler*, 144 F.3d at 671.

[12] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[13] *Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[14] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

termination were pretextual. In response, Ribeau contends there are sufficient facts in dispute to defeat USD 290's motion.

In bringing his claim for age discrimination, Ribeau concedes the lack of direct evidence of discrimination, but instead relies on circumstantial evidence and the familiar burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[15] Under this framework, a plaintiff has the initial burden of establishing a prima facie case of discrimination.[16] Once a prima facie case is established, the burden shifts to the defendant to provide a legitimate, non-discriminatory explanation for its adverse action against the employee.[17] If the defendant is able to provide this explanation, the burden shifts back to the plaintiff to provide evidence to support an inference that the offered explanation was merely pretextual.[18]

Here, USD 290 concedes that Ribeau met the initial burden of establishing a prima facie case of discrimination. Likewise, Ribeau concedes that USD 290 offered a legitimate explanation for the termination. Therefore, the only issue before the Court is whether Ribeau has placed sufficient facts in controversy from which a jury could reasonably infer USD 290's explanations for the reassignment and termination of Ribeau were merely pretextual.

**A. Reassignment**

Ribeau's first claim against USD 290 alleges Smith discriminated against him on the basis of age when he decided to remove some of his responsibilities and give them to a younger employee.

---

[15] 411 U.S. 792, 802-04 (1973); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

[16] *Argo*, 452 F.3d at 1201.

[17] *Id.*

[18] *Id.*

USD 290 claims Smith made the decision in response to Ribeau informing Smith he had too many responsibilities and was unable to complete all of the tasks assigned to him. The only evidence offered by Ribeau to prove this was not the reason for the reassignment is his claim that during the conversation Smith stated, "it's good to get young blood in these positions . . . they've got lots of energy and ideas."[19]

This single statement alone is insufficient for the Court to infer the offered explanation is merely pretextual.[20] In *Stone v. Autoliv ASP, Inc.*,[21] an employee brought a claim of age discrimination based on the comments made by his supervisor during a meeting to discuss the reorganization of the company.[22] When the plaintiff asked if he would have a position after the reorganization, the supervisor told him he did not know yet, but "at [his] age, it would be difficult to train for another position."[23] The Tenth Circuit held that the single statement was too isolated and abstract to show "that age actually played a role in the defendant's decision-making process and had a determinative influence on the outcome[.]"[24] Likewise, in *Cone v. Longmont United Hospital Association*,[25] the Tenth Circuit held that a statement that the company "needs

---

[19]Doc. 23, ¶ 22.

[20]*Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000).

[21]210 F.3d 1132 (10th Cir. 2000).

[22]*Id.* at 1135.

[23]*Id.*

[24]*Id.* at 1140.

[25]14 F.3d 526 (10th Cir. 1994).

some new young blood" was also insufficient to support a finding of discrimination absent other evidence of discrimination.[26]

Here, Ribeau's claim is based on a statement almost identical to the one in *Cone*, which the Tenth Circuit held to be insufficient evidence of pretext.[27] Moreover, Smith made the decision to reduce Ribeau's workload immediately after Ribeau told him he had too many responsibilities, and there is no evidence that Smith was considering the reassignment prior to this conversation. Because the Tenth Circuit has previously held similar statements to be insufficient for establishing discrimination and there is such a strong correlation between Ribeau informing Smith he was overworked and Smith's decision to reduce his workload, Ribeau has not set forth sufficient factual assertions to allow a reasonable inference that the offered explanation for the reassignment was merely pretextual.[28] Accordingly, USD 290 is entitled to summary judgment on this issue.

**B. Termination**

Next, Ribeau contends the offered explanation for his termination is false because Ribeau never had any conversations with Smith about his poor work performance, and Smith and Katt placed the alleged supporting documentation into Ribeau's employee file after his termination in order to conceal their discrimination. USD 290 responds by arguing this evidence is irrelevant because *Riggs v. Air Tran Airways, Inc.*,[29] held that a plaintiff cannot establish pretext simply by

---

[26]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

[27]*See Stone*, 210 F.3d at 1140.

[28]*See Stone*, 210 F.3d at 1140.

[29]497 F.3d 1108 (10th Cir 2007).

offering evidence that the allegations used as the basis for the decision to terminate an employee were inaccurate.[30]

USD 290's reliance on *Riggs* in this case is misguided. First, the sentence addressing the truth of allegations made against a terminated employee was merely dicta in the court's basic explanation of the standard for proving pretext.[31] Second, cases that have addressed the issue have rejected evidence of the untruthfulness of an allegation leading to termination only when the employer's decision to terminate was based on a good faith reliance on an allegation it believed at the time to be truthful.[32] For example, in *Young v. Dillons Companies,*[33] the Tenth Circuit held that an electronic time card showing an employee clocked out at the right time was not evidence that the employer's decision to terminate him for leaving work early was pretextual because the employer presented sufficient evidence to show it had a reasonable belief the plaintiff left early and was not aware of the contradictory evidence.[34]

Here, Ribeau does not argue that Smith and Katt made a good faith decision to terminate him based on information they were not aware was inaccurate. Instead, Ribeau contends that Smith and Katt acted in bad faith by intentionally adding inaccurate information to his employee file to hide their discriminatory motive. Therefore, the rule set forth in *Riggs,* is not applicable in this situation.

USD 290 next contends that Ribeau has failed to set forth enough evidence to allow a reasonable inference that Smith and Katt were engaged in discrimination. Although, there is no

---

[30]*See Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007).

[31]*See id.*

[32]*See Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007).

[33]468 F.3d 1243.

[34]*Young v. Dillon Cos.*, 468 F.3d 1243, 1251 (10th Cir. 2006).

specific type of evidence that must be offered to show pretext, the Supreme Court has held that absent an abundance of "uncontroverted independent evidence that no discrimination had occurred[,]" evidence that the offered explanation for the termination is false may be enough for a jury to make an inference of discrimination.[35] This is because "more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting."[36] Therefore, when all the legitimate reasons for an adverse employee action have been eliminated, "it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration . . . ."[37]

Here, Ribeau claims that USD 290's offered explanation was not the actual reason for his termination. Instead, Ribeau claims Katt terminated him because of his age and then attempted to conceal that fact by altering Ribeau's employee records after his termination. To support these claims, Ribeau offers his personal testimony that none of his supervisors ever told him he was performing unsatisfactorily, and that the documentation of these conversations was not in his file when he received it the day after his termination. Ribeau's contention that the warnings were added to the file after he was terminated is further supported by the fact none of the warnings were signed by Ribeau, despite having a line for an employee's signature. Assuming Smith and Katt doctored the files after Ribeau's termination, as the court must at this stage of the litigation, it would be reasonable to infer that Ribeau was not terminated because of his poor work performance. Because there is no evidence of any other legitimate explanations for the termination nor an "abundance of

---

[35]*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146-48 (2000).

[36]*Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (U.S. 1978).

[37]*Id.*

uncontroverted independent evidence" that USD 290 was not engaged in discrimination, it would then be reasonable to make the additional inference that USD 290 was engaged in age discrimination when it terminated Ribeau. Therefore, there is a genuine issue as to a material fact, and accordingly USD 290 is not entitled to summary judgment on this issue.

**C. Due Process Claims against Smith and Katt**

Ribeau's second claim is against Katt and Smith personally for depravation of a protected property interest without due process. Ribeau claims that an implied contract for his continued employment was formed when two supervisors told him that it was the policy of the school board not to terminate an employee without a justification. Because this implied contract would be a protected property interest, Ribeau contends Katt should have provided him with an opportunity to be heard prior to his termination. Smith and Katt contend that Ribeau did not have protected property interest because during the course of his employment, Ribeau signed twenty-three written employment agreements that stated he was an at-will employee that could be terminated for any or no reason. Alternatively, if the Court finds Ribeau did have a protected property interest, Smith and Katt argue they are entitled to qualified immunity because it was not clear Ribeau had a protected property interest. Finally, Smith and Katt claim Ribeau waived any claims for depravation of due process by not following the school board's approved appeal process, which would have given him an opportunity to present his case to the members of the school board and the superintendent.

The Fifth Amendment's procedural due process protections, applicable to the states through the Fourteenth Amendment, only applies to individuals deprived of a recognized property or liberty interest.[38] The question of whether a individual has a protected property interest is determined by

---

[38] *See, e.g., Anglmyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 536 (10th Cir. 1994).

looking at state law.[39] In Kansas, an employee is considered to be an at-will employee unless there is an express or implied contract fixing the duration of the employment or limiting the employer's ability to terminate the employee.[40] Kansas courts have concluded that at-will employees do not have a "vested property interest in [their] job which is entitled to protection by the Fourteenth Amendment . . . unless it is created by state, ordinance, or implied or written contracts."[41]

An individual's "unilateral expectation" or strong desire to hold an interest in continued employment is not enough to overcome the assumption that the employee is an at-will employee.[42] Instead, there must be sufficient evidence to find that it was the subjective intent of both parties that the employee not be fired without good cause.[43] Moreover, when the language of a written employment contract is clear and unambiguous, the Court must rely on the language of contract in determining the intent of the parties.[44] Extrinsic evidence may be considered only if the contract language is ambiguous or uncertain.[45]

Here, Ribeau entered into twenty-three separate written agreements with USD 290 stating that he was an at-will employee terminable for any or no reason; the most recent of these being his 2007/2008 employment contract, which he was working under at the time of his termination. That contract stated that Ribeau's "[e]mployment may be terminated by either party at any time, for any

---

[39] *See, e.g., Bd. Of Regents v. Roth*, 408 U.S. 564 576-77 (1972).

[40] *See, e.g., Brantley v. Unified Sch. Dist. No. 500*, 2010 WL 5173817, at *6 (10th Cir. Dec. 16, 2010).

[41] *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1136 (10th Cir. 1994) (quoting *Pilcher v. Bd. of Cnty. Comm'rs*, 14 Kan. App. 2d 206, 210, 787 P.2d 1204, 1208(1990)).

[42] *Id.* at 135.

[43] *Id.*

[44] *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1236 (10th Cir. 2004).

[45] *Id.*

reason[.]"[46] This language clearly indicates the intent of USD 290 for Ribeau to remain an at-will employee, and therefore precludes any further inquiry into Ribeau's offered extrinsic evidence.[47] Because Kansas courts have held at-will employees do not have a protected property interest in their continued employment, Smith and Katt were not required to provide Ribeau with an opportunity to be heard prior to his termination. As a result, Ribeau has not placed into contention sufficient facts from which a reasonable inference that he was deprived of a property interest without due process. Accordingly, Smith and Katt are entitled to summary judgment on this issue.

**IT IS THEREFORE ORDERED** that USD 290's Motion for Summary Judgement (Case No. 08-2659, Doc. 20) is hereby **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Smith and Katt's Motion for Summary Judgement (Case No. 10-2104, Doc. 19) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 25th day of March, 2011.

*/s/ Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[46]Doc. 19, ¶ 2.

[47]*See Meiners*, 359 F.3d at 1236.